[Cite as *State v. Jefferson*, 2017-Ohio-1192.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   27135 |
| | : | |
| v. | : | T.C. NO. 16-CR-330 |
| | : | |
| TERRY L. JEFFERSON, JR. | : | (Criminal Appeal from |
| | : |   Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ____31ˢᵗ___ day of _____March_____, 2017.

. . . . . . . . . .

MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, 301 W. Third Street, 5ᵗʰ Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

CARL BRYAN, Atty. Reg. No. 0086838, 120 W. Second Street, #603, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Terry L. Jefferson, Jr. pled guilty in the Montgomery County Court of Common Pleas to two counts of felonious assault (serious physical harm and deadly weapon), felonies of the second degree, and to one count of aggravated robbery (serious physical harm), a felony of the first degree.   He was convicted and sentenced to six years

on each offense, with the sentences to be served concurrently. The trial court also imposed post-release control and ordered Jefferson to pay costs.

{¶ 2} Jefferson appeals, arguing that the felonious assaults should have been merged into the aggravated robbery, because they were allied offenses of similar import. For the following reasons, the judgment of the trial court will be affirmed.

## I. Facts

{¶ 3} The incident that led to the charges against Jefferson occurred on January 28, 2016. Jefferson had a history of doing odd jobs and handyman work for James Reid, and sometime earlier, Jefferson had repaired a roof on a property owned by Reid; Jefferson had not been paid for this work. Although the timeline was unclear, the roofing work appears to have been performed at least several months, and possibly as much as two years, before the altercation in question.

{¶ 4} On January 28, 2016, Jefferson and Reid ran into each other by chance at a grocery store, and they exchanged words inside the store over the money that was allegedly owed. They then proceeded to their own vehicles in the parking lot. As Reid was attempting to leave the parking lot, Jefferson drove his pick-up truck into the driver's side door of Reid's SUV. Reid believed that he was briefly knocked unconscious.

{¶ 5} Jefferson then got out of his truck, reached through the broken window of Reid's SUV, and choked and beat Reid. Reid stated that he regained consciousness as he was being choked. Jefferson jumped through the window and continued to assault Reid; the two men eventually moved or fell into the back seat of the SUV and then fell out onto the pavement and grass, as Jefferson kicked and punched Reid in the head. During the altercation, Jefferson was demanding money from Reid. Jefferson eventually took a

necklace off of Reid's neck and some lottery tickets that he had just purchased, which had been in the front pocket of his pants. Jefferson then left the scene.

{¶ 6} Reid suffered serious injuries, including broken bones in his face, and he needed reconstructive surgery.

{¶ 7} Several bystanders witnessed the altercation between Jefferson and Reid, and two people videotaped a substantial portion of the altercation. One of these videos was played at the sentencing hearing.

{¶ 8} On February 5, 2016, Jefferson was indicted on two counts of felonious assault and one count of aggravated robbery, as described above. He pled guilty to each of the offenses and was sentenced to concurrent six-year terms. The trial court concluded that the offenses were not allied offenses of similar import and did not merge them for sentencing.

## II. Allied Offenses

{¶ 9} The first count of felonious assault (deadly weapon) was based upon Jefferson's crashing his truck into Reid's vehicle. The second count of felonious assault (serious physical harm) was based on Jefferson's beating and kicking Reid in and around Reid's vehicle. The aggravated robbery was based on Jefferson's removal of Reid's necklace and lottery tickets during the altercation.

{¶ 10} The Ohio Supreme Court's jurisprudence on allied offenses has evolved over time, but it recently addressed this issue in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. It stated:

> When the defendant's conduct constitutes a single offense, the
> defendant may be convicted and punished only for that offense. When the

conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses. R.C. 2941.25(B).

A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance -- in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation.

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the

meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*Id.* at ¶ 24-26.

{¶ 11} The evidence presented at the sentencing hearing demonstrated that there was substantial damage to both vehicles as a result of the collision, and Reid believed that he had briefly been rendered unconscious. The video showed how the cars were positioned immediately after the collision, as a bystander approached. The video also showed Jefferson atop Reid in the back seat of Reid's vehicle, as Reid's head hung out the open back door. Jefferson was intermittently punching Reid in the face, yelling about the money owed to him (Jefferson), digging in Reid's pockets, pausing, and talking with a bystander about his grievance against Reid. The altercation continued for several minutes. Throughout this time, Reid was pleading for help from the bystander-videographer. Jefferson then kicked Reid in the head from the inside of the SUV, stepped out of the car, and pushed or dragged Reid out with him, whereupon he continued to hit Reid in the face and head. It is unclear from the video when Jefferson took Reid's necklace, but Jefferson does not deny this fact, and the necklace was later recovered from Jefferson's wife, who admitted that it had blood on it when Jefferson gave it to her.

{¶ 12} Jefferson left the parking lot before the police arrived. The police officer who responded to the scene testified that it was difficult to determine which of Reid's injuries had been caused by the collision as opposed to the beating.

{¶ 13} The trial court concluded that the two felonious assaults were committed separately: "the felonious assault with a deadly weapon was committed by the vehicle

collision that Mr. Jefferson caused and * * * that offense was separate from and distinct from the felonious assault, serious physical harm, which was the result of the beating that we saw in the video." The court also concluded that the items taken from Reid during the aggravated robbery constituted a separate harm from the felonious assault offenses, and therefore the aggravated robbery and felonious assault counts did not merge.

{¶ 14} The trial court correctly determined that the felonious assaults did not merge with the aggravated robbery. As the court pointed out, the harm caused by the beating was different from the harm caused by the robbery, and under *Ruff*, conduct "can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." Moreover, Jefferson's conduct, as reflected in the video, supports the conclusion he was motivated by anger and vengeance over non-payment of the debt as well as his desire to obtain repayment. We have held that the use of force far in excess of that required to commit a robbery may indicate a separate animus for another offense. *See, e.g., State v. Jackson*, 2d Dist. Montgomery No. 24430, 2012-Ohio-2335 (involving aggravated robbery and murder). On this basis, the court could have reasonably concluded that Jefferson had a separate animus for the felonious assaults and the aggravated robbery. The court did not err in refusing to merge the counts of felonious assault with the aggravated robbery.

{¶ 15} The assignment of error is overruled.

### III. Conclusion

{¶ 16} The judgment of the trial court will be affirmed.

. . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Michael J. Scarpelli
Carl Bryan
Montgomery County Common Pleas Court
c/o Hon. Mary Katherine Huffman, Administrative Judge